EQUAL RIGHTS CENTER,
et al., Plaintiffs,

v.

ARCHSTONE–SMITH TRUST, et al.,
Defendants/Cross–Plaintiffs,

v.

Niles Bolton Associates, Inc.,
Cross–Defendant.

No. AMD–04–3975.

United States District Court,
D. Maryland.

Feb. 7, 2008.

Donald Lee Kahl, Isabelle Marie Thabault, Washington Lawyers Committee for Civil Rights, Joseph M. Sellers, Matthew Keith Handley, Cohen Milstein Hausfeld and Toll PLLC, Washington, DC, for Plaintiffs.

Gary A. Winters, Andrew A. Nicely, Richard Ben Veniste, Mayer Brown LLP, Richard O. Wolf, Robert Milton Moore, Moore and Lee LLP, McLean, VA, Terrence Mi-

chael, McShane Lee and McShane PC, Nicholas S. McConnell, Russell S. Drazin, Jackson and Campbell PC, Lynn Estes Calkins, Holland and Knight LLP, Washington, DC, Charles E. Rogers, Smith Currie and Hancock LLP, Cheryl H. Shaw, Kent T. Stair, Carlock Copeland Semler and Stair LLP, Atlanta, GA, William D. Gillis, Jr., Donovan Hatem LLP, Boston, MA, Howard Spessard Stevens, Wright Constable and Skeen LLP, Baltimore, MD, for Defendants.

Charles E. Rogers, Smith Currie and Hancock LLP, Cheryl H. Shaw, Kent T. Stair, Carlock Copeland Semler and Stair LLP, Atlanta, GA, Nicholas S. McConnell, Russell S. Drazin, Jackson and Campbell PC, Gary A. Winters, Mayer Brown LLP, Washington, DC, William D. Gillis, Jr., Donovan Hatem LLP, Boston, MA, for Cross–Defendants.

Andrew A. Nicely, Gary A. Winters, Mayer Brown LLP, Washington, DC, for Cross Claimant.

## MEMORANDUM AND ORDER

BETH P. GESNER, United States Magistrate Judge.

This case has been referred to me for the resolution of discovery disputes. 28 U.S.C. § 636. Currently pending are Cross–Plaintiffs Archstone–Smith Trust and Archstone–Smith Operating Trust's (collectively, "Archstone") Motion for a Protective Order Barring Discovery of Settlement Negotiations, Niles Bolton's Associates, Inc.'s ("NBA") Response and Archstone's Reply. (Paper Nos. 128, 129, 132.) Based upon a review of the pleadings and for the reasons stated below, Archstone's Motion is granted.

The original complaint in this case was filed by plaintiffs Equal Rights Center, American Association of People with Disabilities, and United Spinal Association (collectively, "plaintiffs") alleging that Archstone and others violated the accessibility requirements of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") in connection with the design and construction of more than 100 apartment buildings owned and operated by Archstone throughout the United States. After settlement negotiations, Archstone and plaintiffs entered into a settlement agreement, embodied in a Consent Decree entered by this court on June 9, 2005. (Paper No. 37.) Pursuant to the agreement, Archstone paid plaintiffs $1.4 million and obligated itself to survey and retrofit 71 properties to comply with the requirements of the FHA and the ADA. Fifteen (15) of these properties are alleged to have been designed by NBA under contracts between Archstone and NBA. Archstone filed a cross-claim against NBA seeking to recover the portion of the $1.4 million attributable to NBA properties (identified as 21% of that amount), the costs of retrofitting those portions of the NBA properties that were not designed in conformity with applicable FHA and ADA requirements, and a portion of Archstone's attorney's fees incurred in the case.

NBA served Archstone with a document request seeking "all non-privileged documents which concern or relate to the negotiation, execution and substantive terms of the settlement reached between [Archstone] and Plaintiffs." (Paper No. 128 at 2–3.) Archstone objected to production of those documents. NBA did not file a motion to compel, but instead served subpoenas on plaintiffs and their counsel seeking basically the same information they sought from Archstone.[1] Archstone's Motion for a Protective Order followed. Because the terms of the settlement agreement in the Consent Decree are available to NBA and because Archstone asserts that it "has already agreed to provide ... what remediations Archstone agreed to make at each of the NBA Properties, the costs of the remediations, and what FHA or ADA standard made the remediations necessary," (Paper No. 128 at 9), the issue remaining is whether NBA can discover materials regarding positions taken by each side in the settlement negotiations and how the parties brokered their compromise.

---

1. The subpoenas sought documents pertaining to the settlement of all claims asserted against Archstone for all properties, not just the NBA properties, and "any completed, planned or proposed modifications to any Properties as a result of the aforementioned settlement." (Paper No. 129 at 3.)

Archstone argues that the settlement materials sought are inadmissible as evidence pursuant to Federal Rule of Evidence 408 and that NBA has not established that the materials are likely to lead to the discovery of admissible evidence as required by Federal Rule of Civil Procedure 26(b). Archstone maintains that the ultimate issue presented by its cross-claim is whether the architectural plans that NBA designed for Archstone were in compliance with the accessibility requirements of the FHA and the ADA. (Paper No. 128 at 2.) NBA responds that Rule 408 does not prohibit discovery of settlement related documents and that the majority of courts have rejected the notion of a "settlement" privilege. NBA argues that the documents are discoverable and lists a number of issues that must be resolved in the context of Archstone's indemnity claim against NBA, each of which NBA maintains is significantly impacted by the information contained in the documents NBA has requested. (Paper No. 129 at 9–11.) In reply, Archstone notes that it does not claim that there is a federal settlement privilege and argues that NBA has failed to establish that the materials are likely to lead to the discovery of admissible evidence. (Paper No. 132 at 3–8.)

As a preliminary matter, the court notes that neither party apparently urges this court to recognize a federal settlement privilege, nor does the court find, based upon its review of the case law, that such a privilege should be recognized. Indeed, in *Johns Hopkins University, et al. v. Datascope Corp.*, No. WDQ–05–0759, 2007 WL 1450367, at *1 (D.Md. May 16, 2007), Magistrate Judge Paul Grimm did not consider the existence of a settlement privilege in determining whether documents concerning settlement negotiations and a settlement agreement were discoverable. Rather, Judge Grimm employed a traditional analysis under Federal Rule of Civil Procedure 26(b)(1) in determining whether the documents at issue were relevant and, therefore, discoverable. *Id.*

Such an analysis is appropriate in this case as well.[2]

The scope of discovery is governed by Fed.R.Civ.P. 26(b)(1) which limits discovery to "any matter, not privileged, that is relevant to the claim or defense of any party." As Judge Grimm noted in *Datascope*, this language was intended to narrow the scope of discovery and limit it to the claims and defenses raised in the pleadings. *Id.* The Rule allows for broader discovery of matters relevant to the subject matter of the action upon a showing of good cause by the moving party. Finally, the Rule notes that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Relevance is not defined by Rule 26(b)(1) but reference to Fed.R.Evid. 401 is helpful because it defines that term as "evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R.EVID. 401.

Here, NBA argues that the settlement materials are relevant because Archstone seeks indemnification from NBA for payments it agreed to make as part of the settlement and, therefore, all documents related to that settlement process are relevant. Federal Rule of Evidence 408 by its terms renders settlement negotiations inadmissible at trial except under circumstances not argued by the parties to be applicable here. Because the settlement materials are inadmissible themselves, they are discoverable under Federal Rule of Civil Procedure 26(b)(1) if they are reasonably calculated to lead to the discovery of other evidence that would be admissible at trial. In support of its argument for full discovery of all matters related to the settlement between Archstone and the plaintiffs, NBA argues that the settlement materials are relevant to numerous "issues" that must be resolved in this case

2. Archstone, relying on cases from outside the Fourth Circuit, appears to argue that NBA must meet a heightened standard of discovery for settlement material and establish a "compelling need" for the settlement materials that overrides the interest in preserving the confidence of settlement negotiations. (Paper No. 128 at 9; Paper No. 132 at 3.) While the court does not here apply that standard, it is mindful of the purpose underlying Fed.R.Evid. 408 and the fact that evidence of compromises is generally inadmissible.

and lists those issues in its opposition. (Paper No. 129 at 9–11.) An examination of the issues identified by NBA, however, reflects that NBA has failed to identify how the information it seeks is reasonably calculated to lead to the discovery of admissible evidence.

First, several of the "issues" raised by NBA as to why the settlement documents are relevant relate to how Archstone is allocating the $1.4 million settlement it paid to plaintiffs across the 71 properties subject to the settlement. Archstone responds that it is merely allocating 21% of that sum to NBA because NBA designed 15 of the 71 properties, (*i.e.*, 21% of the total), and that the parties did not agree on a damage figure for any particular property or for any particular type of violation.[3] (Paper No. 132 at 4.) Based upon this representation, the court cannot envision how the settlement documents will yield admissible evidence. Second, NBA maintains that the documents sought would shed light on why Archstone agreed to remedy certain violations but not others. The fact that Archstone only agreed to remedy certain violations is not relevant to the question of whether NBA is responsible for the violations Archstone did agree to remedy.[4]

Along those same lines, NBA says it must have information relating to the standards and safe harbor provisions that plaintiffs and Archstone used to identify the design flaws that would be remediated. The court accepts Archstone's representation that it has provided this information, (Paper No. 132 at 7), and is not persuaded by NBA's blanket assertion that settlement materials will bear admissible evidence on the issue. So too, the court is not convinced that settlement materials will lead to admissible evidence regarding whether any of the violations to be remedied are attributable to inadequate maintenance.

As Archstone points out, NBA can determine that by examining the individual violations that have been remedied; whether they were caused by inadequate maintenance versus inadequate design should be readily apparent.

NBA also asserts that the motives of both Archstone and plaintiffs in agreeing to certain settlement terms are relevant. NBA, however, has not adequately established how what Archstone or plaintiffs said or were thinking during the course of its settlement discussions with plaintiffs will lead to admissible evidence. This is particularly true for settlement discussions relating to properties other than the NBA properties which, in the court's view, have no apparent relevance to the narrow issues remaining in this case involving the 15 properties designed by NBA.

Finally, NBA argues, without explanation, that discovery of the settlement process will shed light on the extent to which Archstone sustained damages due to its decision to settle claims which were barred by the statute of limitations. NBA's ability to assert any statute of limitations defense is unaffected by what Archstone might have done in the context of their settlement with plaintiffs. Whether Archstone compromised a legal issue in the context of settlement discussions is not relevant to the independent vitality of that legal issue.

In sum, the court is not persuaded by NBA's conclusory assertions regarding why the entirety of the settlement process between Archstone and plaintiffs, that is, all documents relating to the "negotiation, execution, and substantive terms of the settlement," is subject to discovery. *See Datascope*, 2007 WL 1450367, at \*2 (rejecting "conclusory assertions of relevance" in holding that settlement related documents were not subject to discovery). The issues between Archstone and NBA remaining in this

---

3. Since Archstone provided the information regarding its position on the allocation of the settlement amount in its reply memorandum, NBA may confirm this information through the use of an interrogatory.

4. Although the settlement agreement between Archstone and the plaintiffs defines the obligations of Archstone, it does not in turn dictate the obligation of NBA to indemnify Archstone.

The issue is not whether Archstone should have agreed to remedy certain perceived violations of the ADA and FHA. The question is whether there is a violation and, if so, whether NBA is responsible for that violation by virtue of deficient design plans. If NBA's plans are determined to be deficient, it may then be obligated to indemnify Archstone.

case are limited. They have been significantly narrowed by virtue of settlements involving virtually all aspects of this case, other than the pending dispute between Archstone and NBA regarding indemnification. NBA has failed to establish how a wholesale exploration of the settlement process between plaintiffs and Archstone falls within the scope of permissible discovery.[5] The court is not willing to open the gate to expansive and costly discovery in the absence of a specifically articulated bases for disclosure authorized by Fed.R.Civ.P. 26(b)(1).

█ Further, the court must observe that, even if NBA had established that the settlement materials were subject to discovery pursuant to Fed.R.Civ.P. 26(b)(1), the court has considerable discretion, pursuant to Fed. R.Civ.P. 26(b)(2)(C), to limit otherwise permissible discovery after consideration of the costs and benefits associated with potentially burdensome discovery requests. *Thompson v. United States Dept. of Hous. and Urban Dev.*, 219 F.R.D. 93, 98 (D.Md.2003). Here, NBA has access to the settlement agreement at issue (*i.e.*, Consent Decree), the remediations Archstone agreed to make, the costs of the remediations, what FHA or ADA standards made the remediations necessary, and the basis for seeking indemnity from NBA for 21% of the $1.4 million settlement amount. Balancing the cost-benefit factors set forth in Fed.R.Civ.P. 26(b)(2)(C)(iii), the court notes that the information sought by NBA has either already been produced by Archstone or is obtainable through a less burdensome and expensive source such as depositions that will likely be done in this case in any event. Considering all of the factors set forth in Fed.R.Civ.P. 26(b)(2)(C)(iii), the court believes that the burden and expense of the proposed expansive discovery by NBA would outweigh its likely benefit even if NBA has established its right to such discovery pursuant to Fed. R.Civ.P. 26(b)(1).

For the foregoing reasons, IT IS HEREBY ORDERED this *7th* day of February, 2008, that Archstone's Motion for Protective Order (Paper No. 128) is GRANTED.

---

5. NBA's document request and subpoenas at issue here seek a very general and extremely broad category of documents, that is, "all non-privileged documents which concern or relate to the negotiation, execution and substantive terms of the settlement reached." (Paper No. 128 at 3.) NBA has not made any particularized request for certain documents. As a result, the court does not preclude the possibility that NBA might be able to articulate a recognizable basis for the discovery of certain matters. The court merely holds that it has not done so here.